**Sharon Dawn LOCKABY, Plaintiff,**

v.

**UNITED TESTING GROUP, INC., and Top Source, Inc., Defendants.**

No. Civ. 1:94–CV–2945A–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 28, 1997.

Rose E. Goff, Greene Buckley Jones & McQueen, Atlanta, GA, Peter Howard Strott, Office of Peter Howard Strott, Atlanta, GA, for Plaintiff.

Henry D. Fellows, Jr., Fellows Johnson & La Briola, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

The above entitled action is presently before the Court on plaintiff's Notice of Appeal [48] from the Magistrate's Order [45] granting defendants' Renewed Motion for Summary Judgment [40]. This Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the Magistrate's Order should be **AFFIRMED.**

### BACKGROUND

Plaintiff was hired by defendant United Testing Group, Inc. (hereinafter "UTG") shortly after UTG was acquired by defendant Top Source, Inc. (hereinafter "Top Source"). (Mag. Order [45] at 4.) During the course of

plaintiff's employment, she allegedly observed acts of discrimination which she eventually reported to UTG Vice President and General Manager Robert Starling. (*Id.* at 5–6.) Approximately one month later, plaintiff was informed by Mr. Starling that her job responsibilities were being centralized and her employment was terminated. (*Id.* at 6.) Defendants explain that Top Source officials, without knowledge of plaintiff's prior complaints, elected to consolidate certain administrative functions and plaintiff's dismissal was a result of this reorganization. (*Id.* at 4.)

Plaintiff brought this action alleging that she was dismissed in retaliation for expressing concerns about race discrimination at UTG. (Pl. Stmt. of Disputed Material Facts [43] at 5.) Defendants filed a Renewed Motion for Summary Judgment asserting that plaintiff had failed to establish Mr. Starling as the decision maker who occasioned her dismissal and also that plaintiff could not demonstrate that the actual decision makers, three Top Source officials, had knowledge of her complaints of racial discrimination. (Brief for Appellee [57] at 6.) The Magistrate Court granted defendants' Motion for Summary Judgment. (Mag. Order [45].)

## DISCUSSION

### I. *Summary Judgment Standard*

■ A review of the Magistrate Court's grant of summary judgment is *de novo*. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 795 (11th Cir.1992). Therefore, the Court must examine this appeal under the same summary judgment standard to be utilized in any case originating before this Court.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2551–52.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence[1] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsu-*

---

1. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

*shita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

## II. *Analytical Approach to Identifying Employment Discrimination*

Analysis of discrimination or retaliation in the work place must begin with the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* provides procedural guidance for the allocation of intermediate burdens and the order of presentation of proof in employment discrimination and retaliation cases.[2] *Id.*

The complainant in a retaliation action must "carry the initial burden ... of establishing a *prima facie* case." *Id.* Once plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the employer's adverse treatment of plaintiff. *Id.* Finally, plaintiff must be afforded a fair opportunity to show that defendants' stated reason was, in fact, mere pretext. *Id.* at 804, 93 S.Ct. at 1825.

## III. *Plaintiff's Prima Facie Case*

As stated, plaintiff bears the initial burden of production under the *McDonnell Douglas* approach. In the context of retaliation in the workplace, establishing a *prima facie* case requires plaintiff to demonstrate: first, that plaintiff engaged in protected opposition to Title VII discrimination; second, that plaintiff was subject to adverse action by her

employer; and third, that there was a causal connection between the protected opposition and the adverse employment action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Whatley v. M.A.R.T.A.,* 632 F.2d 1325, 1328 (5th Cir.1980).

■ Here, as is often the case, the first two factors have been satisfactorily demonstrated. During her course of employment, plaintiff claims to have observed acts of racial and national origin discrimination in defendants' hiring and employment practices which she reported to Vice President and General Manager Robert Starling. (Mag. Order [45] at 6.) Plaintiff's complaints to Starling qualify as a protected expression.[3] Plaintiff was subjected to an adverse action by her employer when her employment with UTG was terminated.

■ Whether plaintiff can establish the causal component of her *prima facie* case, however, has been the focus of substantial debate in this case. Causation requires a showing that the employer's action was "discriminatorily" motivated. *Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992). To establish discriminatory intent, plaintiff must demonstrate, at a minimum, that the employer was actually aware of the protected activity at the time of the adverse employment action. *Goldsmith,* 996 F.2d at 1163. *See also Lewis v. Zilog,* 908 F.Supp. 931, 948 (N.D.Ga.1995) (Hull, J.) (before employer can discriminate, employer must be aware of protected activity or condition); *E.E.O.C. v. Carolina Freight,* 723 F.Supp. 734, 748 (S.D.Fla. 1989) (actual knowledge of protected activity necessary to establish causation in discrimination case). An employee's allegations, opinions and conclusory statements are insufficient to show intent to discriminate, and when discriminatory intent is clearly lacking, due to the employer's lack of knowledge of the protected activity, a grant of summary judgment is appropriate. *Maddow v. Procter & Gamble,* 107 F.3d 846, 851 (11th Cir. 1997); *Perryman v. West,* 949 F.Supp. 815, 820 (M.D.Ala.1996).

---

**2.** While the factual basis for the *McDonnell Douglas* action involved discrimination in the workplace, the Eleventh Circuit has recognized that the same framework should apply to retaliation cases. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993).

**3.** The validity of plaintiff's accusation is of little importance to this action. A plaintiff claiming retaliation for her opposition to discriminatory conduct need not prove that the underlying conduct was, in fact, unlawful. *Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir.1997).

Plaintiff has alleged, without denial by defendants, that she voiced her misgivings with regard to UTG's discriminatory practices to Mr. Starling. (Pl.Stmt. of Disputed Material Facts [43] at 2.) Defendants contend, however, that although Mr. Starling informed plaintiff of her dismissal, three Top Source officials were actually responsible for the decision to eliminate plaintiff's former position with UTG.[4] Plaintiff does not contest that these three officials made the decision to centralize administrative functions and transfer her job tasks to Top Source, and neither does she aver that any of these Top Source employees had knowledge of plaintiff's complaints regarding UTG's alleged discriminatory practices. (See Brief for Appellant (56) at 12; Brief for Appellees [57] at 6.)

■ Plaintiff, instead, relies on two distinct arguments in her attempt to avoid summary judgment. First, plaintiff seeks to draw a distinction between the "time of the decision to eliminate and transfer her job duties," and the "time of her discharge." (Brief for Appellant [56] at 12.) Plaintiff suggests that, while Top Source officials decided to terminate her employment, Robert Starling decided when the decision would be implemented. (Id.) Plaintiff predicates defendants' liability on Starling's decision. (Id.) The Court is unpersuaded by this semantical argument, finding it only logical that the time of the "adverse employment action" is the time of the decision to take such action, not the moment at which the decision is mechanically executed. Under factually analogous situations, courts have recognized that in order to meet the requirement that the employer have actual knowledge of the protected activity, an employee must show that the "individual responsible for making the adverse employment *decision*" knew of the protected activity or condition. *Lewis*, 908 F.Supp. at 949 (employer did not violate ADA where employee failed to show that person who made decision knew of employee's medical condition)(emphasis added); *Wilson v. Willowbrook, Inc.*, 433

F.Supp. 321, 323 (N.D.Tx.1977), *aff'd*, 569 F.2d 1154 (5th Cir.1978), *cert. denied*, 439 U.S. 845, 99 S.Ct. 141, 58 L.Ed.2d 145 (no retaliatory discharge where employee was fired two hours after distributing petition at work but presented no proof that manager who made decision to terminate had read or even knew of employee's protected activity).

■ Plaintiff also argues that the "suspicious timing" of her dismissal, a month after her complaints to Starling, is sufficient evidence of defendants' discriminatory intent to survive summary judgment. Suspicious timing of an adverse employment action may constitute circumstantial evidence of discriminatory intent, *Hunt–Golliday v. Metro. Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1011 (7th Cir.1997), but the mere fact that an employee's protected speech preceded an adverse employment decision does not establish causation so as to render an employer liable for discrimination. *Cromley v. Board of Education of Lockport Township High School Dist. 205*, 17 F.3d 1059, 1068 (7th Cir.1994), *cert. denied*, 513 U.S. 816, 115 S.Ct. 74, 130 L.Ed.2d 28. Moreover, "suspicious" timing cannot logically lead to an inference of discrimination where it is undisputed that the decision makers had no knowledge of plaintiff's protected activity, and so could not possibly have been motivated by the protected activity in terminating plaintiff's employment.

In light of the decision makers' lack of knowledge of plaintiff's complaints, the timing of plaintiff's termination is not "sufficient evidence to support the inference that [her] employer based its employment decision" on these complaints. *Maddow*, 107 F.3d at 851. The Court finds little merit to plaintiff's argument that Starling was the discriminating decision maker, as plaintiff has failed to rebut defendants' evidence that Starling merely played a ministerial role in the termination decision made by three Top Source officials. Because the undisputed evidence demonstrates plaintiff's failure to establish a *prima facie* case of retaliation against defendants,

---

4. The three officials to which defendants refer are James P.R. Samuels, Diane King, and Karen Ward. At the time of plaintiff's dismissal, Mr. Samuels was the chief financial officer of Top Source, Ms. King was the vice-president of administration of Top Source, and Ms. Ward was the human resources manager of Top Source. (Brief of Appellees [57] at 3.) At the directive of Samuels, King and Ward, Top Source centralized administrative efforts (such as payroll, time management, and personnel functions) by transitioning these tasks from UTG to Top Source. (Id.)

the Court affirms the Magistrate's Order and grants defendants' Motion for Summary Judgment.[5]

### IV. *Reduction of Force Analysis*

■■ Although the Court's analysis could end here, having found that plaintiff has failed to establish a *prima facie* case of retaliation against defendants, the Court briefly notes that plaintiff could not survive summary judgment even if she could demonstrate that Starling was the decision maker. The objective evidence in the record is consistent with the conclusion that defendants' action against plaintiff was taken in furtherance of a legitimate reduction in force. Defendants have indicated that plaintiff's termination was a necessary incident of the reduction in force initiated by Mr. Samuels, Ms. King, and Ms. Ward. (Mag. Order [45] at 4.) The essence of a reduction in force is that "competent employees who, in more prosperous times would continue and flourish at a company, may nevertheless have to be fired." *Thurman v. Robertshaw Control Co.*, 869 F.Supp. 934, 939 (N.D.Ga. 1994) (O'Kelley, C.J.). The fact that an employee was dismissed from a job for which she was qualified is an unfortunate result of a reduction in force but it is not, without more, indicia of discrimination. *Id.* at 940; *Stacey v. Allied Stores Corp.*, 768 F.2d 402, 407 (C.A.D.C.1985) (where employer's decision to close down corporate headquarters of an acquired company was for neutral business reasons, employee could not recover from employer on discrimination grounds).

■ When an employer proffers that its termination of an employee resulted from a legitimate reduction in force, a plaintiff seeking to recover on a claim of retaliatory discharge must instead establish that her former position remained open to, or was filled by, a person who was not similarly situated or that the employer intended to discriminate in failing to consider plaintiff for another position. *Wilson v. AAA Plumbing Pottery Corp.*, 34 F.3d 1024, 1027–28 (11th Cir.1994); *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566–67 (11th Cir.1992). If the employee's position is clearly delineated and responsibilities are well defined, the court in a retaliatory dismissal case can focus on the person who replaced the discharged employee or whether the job title was actually filled to determine whether plaintiff has satisfied this burden. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir.1989), rehearing denied, 890 F.2d 1167, cert. denied, 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508.

Defendants admit that another UTG employee, Ms. Esposito, temporarily assumed a small part of plaintiff's duties. (Supp. Brief for Appellees [60] at 2.) However, within three months of plaintiff's dismissal, Ms. Esposito, as well as plaintiff's direct supervisor, Lucretia Stancil, were also dismissed and all related job responsibilities were ultimately transitioned to Top Force. (*Id.*) No UTG employee is currently performing those responsibilities which were previously charged to plaintiff. (Mag. Order [45] at 4.) Furthermore, related tasks were relocated to defendants' out-of-state facility so there has been no suggestion of any available alternate position in which defendants failed to place plaintiff. (Pl. Statement of Disputed Material Facts [1] at 5.) Clearly a reduction in force occurred and led to the elimination of plaintiff's position.

■ A non-discriminatory business decision to effect a reduction in force in the manner which management judges most appropriate cannot support a discrimination action. *Stacey,* 768 F.2d at 408. Whether it was sound business judgment for the employer to make the employee part of a reduction in force is not a matter for the court to adjudicate, *Thurman,* 869 F.Supp. at 940. Therefore, the objective evidence in the record conclusively establishes that plaintiff was terminated in furtherance of a legitimate reduction in force.

---

5. The Court notes its disagreement with the Magistrate's conclusion that plaintiff has established her *prima facie* case of retaliation. (Mag. Order [45] at 9.) Defendants' reorganizational mandate was set forth by Samuels, King, and Ward and it was these persons who, without knowledge of plaintiff's protected activity, dictated the func- tions to be consolidated and the personnel to be dismissed. Because these three individuals indisputably had no knowledge of plaintiff's protected activity, the Court finds that plaintiff has failed to establish the causal component of a *prima facie* retaliation claim.

Because a motion for summary judgment does not lessen the burden on the nonmoving party, plaintiff must still produce sufficient evidence on each element of a *prima facie* case in order to survive a motion for summary judgment. *Kenney v. Shaw Industries, Inc.,* 764 F.Supp. 1504, 1508 (N.D.Ga. 1991) (Murphy, J.). Having failed to identify a causal connection between her protected activity and the subsequent adverse action, plaintiff is unable to establish a *prima facie* case of retaliation. Also, undisputed evidence in the record establishes that plaintiff was terminated because of a reduction in force and plaintiff has presented no evidence that she was actually replaced by someone not similarly situated to her, or that her position remained open. The Court finds that defendants are entitled to summary judgment on plaintiff's retaliation claim.

### CONCLUSION

For the foregoing reasons, the Magistrate's Order is **AFFIRMED,** and defendants' Motion for Summary Judgment is **GRANTED.**